# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-1253

MICHAEL EVANS,

*Plaintiff-Appellee,*

*v.*

ANTHONY KATALINIC, FRED HILL,
WILLIAM MOSHER, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 3570—**David H. Coar**, *Judge.*

ARGUED APRIL 5, 2006—DECIDED APRIL 26, 2006

Before EVANS, WILLIAMS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* Almost 30 years ago, Michael
Evans was convicted of abducting, raping, and killing
9-year-old Lisa Cabassa. The conviction, which was based in
large part on the testimony of a single "eyewitness," was
eventually vacated after DNA testing proved Evans inno-
cent. He has sued the City of Chicago and a number of
Chicago police officers, claiming that they conspired to
falsely convict him by pressuring the witness to identify
him and by withholding evidence that undermined the
witness's credibility. The police officer defendants moved for
summary judgment, based in part on a defense of qualified
immunity. The motion was denied and this interlocutory

appeal followed, as permitted under *Mitchell v. Forsyth*, 472 U.S. 511 (1985).

The witness, Judy Januszewski, was a neighbor and acquaintance of both Lisa Cabassa and Michael Evans— Lisa and her children were playmates, while Evans was friends with one of her coworkers at a nearby real-estate office. Walking home from work on the evening of January 14, 1976, Januszewski reportedly saw some young black men struggling with a young girl. She ran home and for 4 days told no one what she had seen, even after learning that Lisa Cabassa had been killed. On the fifth day, she contacted a reward hotline that offered $5,000 for information about Lisa's death. The hotline alerted the police, who took Januszewski to the station for questioning. She described to them what she had witnessed and helped produce a composite sketch of the suspects. She initially insisted that she did not recognize the young men she saw that night, but 5 weeks later she had a change of heart and gave the police the name of Michael Evans.

Evans was arrested on February 26, 1976, based on Januszewski's identification. His counsel moved to suppress the identification and the arrest, but the court denied the motion without prejudice (the record does not tell us why). A bench trial was held, at which Januszewski was the star witness. Despite various discrepancies between her trial testimony and her initial statement to the police—she originally said that she saw two assailants more than 75 feet away at 6:37 p.m.; at trial, it was three men closer than 20 feet away sometime after 8:00—the court deemed her credible and found Evans guilty. That conviction was vacated when the court discovered another fact bearing on the witness's credibility—she was paid $1,250 in "relocation expenses" after identifying Evans—that had not been disclosed to the defendant. Evans was retried before a jury, this time with codefendant Paul Terry. They were convicted and sentenced to 200-400 years in prison.

Twenty-seven years later, after DNA testing had shown that Evans and Terry were innocent, Evans filed this lawsuit. (Terry reportedly has his own lawsuit under way in state court.) Deposing Januszewski in connection with the suit, Evans got a new perspective on her motivations back in 1976. She explained that after weeks of insisting to the police that she did not know the assailants' names, the police again brought her to the station, held her there from morning until late evening locked in a roach-infested interrogation room with no bathroom, and made veiled threats about their ability to make people talk. She also revealed that the police were the first ones to bring up Evans's name, asking Januszewski whether he could have been among the men she saw. None of this was known to Evans at the time of his trials. Also not known back then was that Januszewski's husband, Harry, told the police that his wife was not trustworthy—she had a history of lying and petty fraud, as well as poor eyesight—and that the police not only shrugged off his concerns but detained him on the day of the trial to prevent him from expressing those concerns to the prosecutor.

Evans claims that the defendants' efforts to get Januszewski to identify him and testify against him, along with other alleged improprieties, deprived him of due process. The defendants asserted qualified immunity and have appealed from the district court's decision rejecting that defense. But there's something odd about the appeal. The point of permitting interlocutory appeals from the denial of qualified immunity is to allow the appellate court to determine whether the alleged behavior violated clearly established law—a purely legal question. *See Johnson v. Jones*, 515 U.S. 304, 313-14 (1995); *Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005). But the defendants aren't arguing that the Constitution allows them to coerce a witness's testimony and withhold evidence of its falsity, or that the law on that point was unsettled in 1976. In-

stead, they argue that Evans doesn't have a right to assert such behavior in the first place.

Here's how their argument works: Evans is claiming that the police got Januszewski to lie about having seen him on the evening of January 14, 1976. But that was basically the theory he presented in the motion he filed before his first trial asking the court to suppress Januszewski's identification of him. That motion was denied; therefore, the issue has been decided; therefore, he is now collaterally estopped from raising the issue in this suit.

This is an absurd argument, for any number of reasons: (1) there is no indication that the court "decided" the issue when it denied Evans's motion to suppress—the motion was denied without prejudice, and there is no transcript to tell us what was argued or what the court was thinking; (2) not only were both convictions following the denial of the motion to suppress vacated upon discovery of new evidence, but Evans has since received a full innocence-based pardon from the governor of Illinois and, we are told, had his criminal record expunged— leaving precious little upon which preclusion could be based; (3) Januszewski's deposition testimony provides additional new evidence of the defendants' activities, unknown at the time of the motion to suppress; and (4) collateral estoppel is an equitable doctrine, and the equities are entirely in favor of allowing Evans to proceed with his claim. (On the requirements for invoking collateral estoppel, *see generally Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1020-23 (7th Cir. 2006).)

The defendants insist that Illinois law holds otherwise. They cite *People v. Enis*, 645 N.E.2d 856, 864 (Ill. 1994): "Where a defendant's conviction has been reversed for trial error, and the cause is remanded for a new trial, the doctrine of collateral estoppel bars the relitigation of a pre-trial ruling, such as a motion to suppress, unless

the defendant offers additional evidence or there are other special circumstances." The formulation is problematic—the principle limiting relitigation of an issue in a later stage of a single proceeding (which is what *Enis* is about) is law of the case, not collateral estoppel. *See Rekhi v. Wildwood Industries*, 61 F.3d 1313, 1317 (7th Cir. 1995). In any event, the present case lacks neither additional evidence nor special circumstances. Even by *Enis*'s terms, there's no estoppel here.

The defendants' remaining argument—that Evans waived his claim against them by not pursuing it back in the 1970s—is too ridiculous to merit comment. We AFFIRM the district court's denial of the defendants' motion for summary judgment and REMAND the case for further proceedings. Costs are awarded to the appellee.

A true Copy:

 Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*